# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>vs.<br><br>SHASHA K. MOORE,<br><br>Defendant-Appellant, | <br><br>CV-S-05-0741-JCM(RJJ)<br><br>**OPINION & ORDER** |

THIS MATTER comes before the Court on Appellant's Appeal from the United States Magistrate Court for the District of Nevada pursuant to 18 U.S.C. § 3402.

## I. FACTUAL BACKGROUND

The testimony presented at trial established without contradiction that on the morning of February 1, 2005, Appellant visited the offices of the Social Security Administration at the Social Security Center located at 2225 North Civic Center Drive, North Las Vegas, Nevada, for purposes of obtaining Social Security cards for her children and changing her address. Transcript of Petty Offense Trial (hereinafter "Transcript") at pp. 5-7, 53-54, and 99. Appellant testified that she

had visited the Social Security Center the preceding day—January 31, 2005—but had left without accomplishing these objectives after waiting approximately two hours. Transcript at pp. 107-108.

Visitors to the Social Security Center are required to take a number and await their turn to see the agency's receptionist. Transcript at pp. 22, 54. The receptionist will call visitors by number, determine the nature of their visit, and place their names on a list to see one of the agency's representatives. Transcript at p. 54. Upon arriving at the Social Security Administration's office's on February 1, 2005, Appellant took a number from the dispenser and sat down and waited to be called. Transcript at p. 100. When her number was called, Appellant approached Rosa Moreno, the Social Security Administration representative acting as the agency's receptionist that morning. Transcript at p. 6. Ms. Moreno testified that Appellant was pleasant when she checked in, Transcript at p. 10, and Appellant agrees that her initial conversation with Ms. Moreno was cordial, Transcript at p. 101. Appellant acknowledges that Ms. Moreno "took down my information, my name, what I was there for, and then told me to have another seat." Transcript at p. 101.

After some time had passed, Appellant—who by her reckoning had been at the Social Security Center for approximately three hours, Transcript at p. 101—

approached Ms. Moreno. Appellant has allowed:

> Well, I was a little impatient at that time, I guess. My number had been called and then I was waiting to be called—my name to be called and I didn't know, you know, what was going on. . . .
>
> Well, basically I just wanted to know what was going on, whether my number—my name had been called or you know, why it was taking so long.

Transcript at pp. 108-109; see also Transcript at p. 116 ("I just wanted to know what was going on or if my name had been called already"). Ms. Moreno testified that she advised the Appellant that her name had previously been called without response. Transcript at pp. 10-11.

While there is a dispute as to whether Appellant's name had already been called, it is undisputed that Appellant at that juncture demanded to speak with a supervisor. Transcript at pp. 10, 102. Ms. Moreno informed the Appellant that the Social Security Administration's office policies and procedures did not permit her to speak with a supervisor at that time, and advised the Appellant to return to her seat to wait to be recalled by a service representative. Transcript at pp. 11, 110-111. Ms. Moreno testified that the Appellant became hostile and refused to comply with these instructions. Transcript at p. 11.

Ms. Moreno summoned the Social Security Center's security guard,

Anthony Nixon, Sr., to her station to deal with the Appellant. Transcript at pp. 11, 53, 102, 112. Mr. Nixon, who is employed by a private contractor, works under the auspices of the Federal Protective Services. Transcript at pp. 63-64. Mr. Nixon asked the Appellant to calm down and lower her voice without avail. Transcript at pp. 16, 54, 102 and 113. Mr. Nixon then asked the Appellant to leave the facility. Transcript at pp. 56, 103 and 114. Appellant refused to leave because—by her lights—she wasn't doing anything wrong. Transcript at pp. 103 and 114. An altercation ensued when Mr. Nixon attempted to detain the Appellant until officers of the Federal Protective Service arrived. Appellant was subsequently cited for causing a disturbance in violation of 41 C.F.R. 102-74.390 (The citation—United States District Court Violation Notice G449259—is attached to Appellant's Opening Brief as Appendix 4.)

## II. PROCEDURAL BACKGROUND

On June 08, 2005, following a bench-trial, the Honorable United States Magistrate Judge Peggy A. Leen entered a judgment convicting Appellant of causing a disturbance in violation of 41 C.F.R. 102-74.390 as alleged in the citation. Magistrate Judge Leen ordered Appellant to perform twenty (20) hours of community service and to pay a ten dollar ($10.00) special monetary assessment.

Appellant timely filed a Notice of Appeal on June 10, 2005. *See* Fed.R.Crim.P. 58(g)(2)(B) ("A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 10 days of its entry").

This Court has appellate jurisdiction over this final decision and sentence under 18 U.S.C. § 3402. In considering an appeal from a Magistrate Judge's judgment of conviction, this Court's review is limited in scope:

> The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in appeal to the court of appeals from a judgment entered by a district judge.

Fed.R.Crim.P. 58(g)(2)(D).

The sole issue on appeal is whether the Magistrate Judge's judgment of conviction is supported by sufficient evidence. More narrowly, Appellant contends that there was insufficient evidence at trial to permit a rational trier of fact to find, beyond a reasonable doubt, that the offense of conviction occurred on federal property—an element of the offense.

## III. SUFFICIENCY OF THE EVIDENCE

The regulation at issue in this case is codified at 41 C.F.R. § 102-74.390. Entitled "What is the policy concerning disturbances?," this regulation directs:

> All persons entering in or on Federal property are
> prohibited from loitering, exhibiting disorderly conduct
> or exhibiting other conduct on property which:
>
> (a) Creates loud or unusual noise or a nuisance;
>
> (b) Unreasonably obstructs the usual use of entrances,
> foyers, lobbies, corridors, offices, elevators, stairways,
> or parking lots;
>
> (c) Otherwise impedes or disrupts the performance of
> official duties by Government employees; or
>
> (d) Prevents the general public from obtaining the
> administrative services provided on the property in
> a timely manner.

*Id.* Section 102-74.390 first appeared in the 2003 version of the Code of Federal Regulations. This regulation was adopted pursuant to 40 U.S.C. § 1315(c), which confers authority on the Secretary of Homeland Security, in consultation with the Administrator of General Services, to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." 40 U.S.C. § 1315(c)(formerly 40 U.S.C. § 318). (Section 1315 additionally authorizes penalties for regulatory violations: "a person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both.") The scope of 41 C.F.R. § 102-74.390—the protected property—thus includes not only land owned or leased by the federal government, but also

premises occupied by federal agencies.[1]

Appellant acknowledges 41 C.F.R. § 102-74.390 is applicable to property occupied by federal agencies as well as property owned or leased by the federal government. *See* Appellant's Reply Brief. Nonetheless, Appellant maintains that the evidence was insufficient to support the Magistrate Judge's conclusion that the Social Security Center was federal property.

In assessing the sufficiency of the evidence, a reviewing court must considering the totality of the trial evidence in the light most favorable to the prosecution. *See e.g., United States v. Ware*, 416 F.3d 1118, 1121-23 (9th Cir. 1997), *cert denied*, 522 U.S. 1097 (1998).

> "This sufficiency-of-the-evidence challenge can succeed only if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Lo*, 231 F.3d 471, 475 (9th Cir. 2000). However,

---

[1] *See United States v. Stansell*, 847 F.2d 609, 614 (9th Cir. 1988) ("The proper scope of section 101-20.304 [an earlier regulation regarding compliance with directions on government property] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme of federal property management against the backdrop of its policies and objectives"); 20 U.S.C.A. § 107e(3) ("'Federal property' means any building, land, or other real property owned, leased, or occupied by any department, agency, or instrumentality of the United States . . ."); 34 C.F.R. § 395.1(g) (same); 32 C.F.R. § 215.3(b) ("Federal property is that property which is owned, leased, possessed, or occupied by the Federal Government").

> this inquiry does not require a court to ask
> itself whether it believes that the evidence at
> the trial established guilt beyond a
> reasonable doubt. Instead, the relevant
> question is whether, after viewing the
> evidence in the light most favorable to the
> prosecution, any rational trier of fact could
> have found the essential elements of the
> crime beyond a reasonable doubt.
>
> *Jackson v. Virginia*, 443 U.S. 307, 318-319, 99 S.Ct.
> 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)
> (*citing Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct.
> 1620, 32 L.Ed.2d 152 (1972)). We have held that "[t]his
> familiar standard gives full play to the responsibility of
> the trier of fact fairly to resolve conflicts in the testimony,
> to weigh the evidence, and to draw reasonable inferences
> from basic facts to ultimate facts." *Jackson*, 443 U.S. at
> 319, 99 S.Ct. 2781.

*United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005).

Under this standard, the totality of the evidence presented at trial in this case is sufficient to sustain the Magistrate Judge's judgment. More particularly, the evidence is sufficient to permit a rational trier of fact to conclude that the Social Security Center was occupied by a federal agency and was federal property at the time of the offense of conviction. Most notably:

(1) Ms. Moreno testimony that she is employed by the federal government, works at the Social Security Center, and her description of the Social Security Administration's activities and procedures at the

Social Security Center on February 1, 2005—including her dealings with the Appellant—permit the inferences that the Social Security Administration is a federal agency and that it occupied and conducted business at the Social Security Center at the time of the Appellant's offense at that facility. *Cf. United States v. Ware*, 416 F.3d at 1122-23 (holding that testimony of bank teller's that bank is federally insured was sufficient to sustain conviction where trial occurred within 5 months of robbery).

(2) These inferences are augmented by the fact that the Social Security Center has been posted as federal property. Government Exhibit 1—a notice entitled in large print "Rules and Regulations Governing Conduct on Federal Property"—was prominently displayed near the entrance of the Social Security Center. Transcript at pp. 58 and 83. *Cf. United States v. Ware*, 416 F.3d at 1123 n. 5 ("Other circuits have held that the evidence was sufficient where the testimony of federally-insured status, while ostensibly only pertinent to the time of trial, was supported by some additional evidence, however scant").

(3) Finally, Mr. Nixon testified that federal business is conducted on the premises by a federal agency—the Social Security Administration.

Transcript at p. 58. Mr. Nixon consistently testified without objection that the Social Security Center was "federal property" at the time of defendant's offense. *See* Transcript at p. 54 ("I . . . explained to her that this is *federal facility*"); p. 55 ("She started using profanity and I advised her at the time that she was causing a disturbance on *federal property*"); p. 56 ("I told Ms. Moore that it was *federal property* [and] I told her I had the right to ask someone to leave if they're causing a disturbance on federal property); p. 62 (explaining that he has the right to touch and detain civilians at the Social Security office "[w]hen the federal law is broken on *federal property*"); p. 64 ("If someone is breaking— violating a law of federal—on *federal property* I have the right to detain until federal police arrive of the local police"). *See also* Transcript at p. 62 (explaining that his employer has a contract with the federal government; that he operates under the federal police, and that he received three months training with federal law enforcement).[2]

---

[2]   While Appellant did not object to Mr. Nixon's testimony at trial, she has on appeal asserted that Mr. Nixon is not competent or qualified to testify regarding these matters because he is not a federal employee. Even if the Court was willing to subscribe to the view that the testimony of a federal contractor is entitled to less weight than the testimony of a federal employee on these matters, defendant's argument is unavailing because it is the trier of fact's role—and not that of a

## IV. CONCLUSION

When the record is read in its entirety and in the light most favorable to the judgment, there is ample evidence from which a rational fact-finder could conclude that the Social Security Center at 2225 North Civic Center Drive, North Las Vegas, Nevada, was federal property at the time of the Appellant's offense.

The Judgment of the Magistrate Judge is therefore **AFFIRMED.**

SO ORDERED this ____ day of November 2005.

James C. Mahan
United States District Judge

---

reviewing court—to assess the weight and credibility of the evidence. *See United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir.1981) (defendant's "arguments on appeal amount largely to assertions about the weight and credibility of the evidence presented by the Government, but it is the jury's role, not ours, to assess credibility of witnesses and resolve conflicts in the evidence"); *United States v. Matthews*, 240 F.3d 806, 816 (9th Cir. 2001) (same), *cert. denied,* 535 U.S. 1120 (2002).